## GROVE *v.* LATSHAW.

Where a vendee gives bond for the purchase money, to be applied to the payment of liens created by the vendor on the land; and such liens are discharged by neglect to revive them, the creditors have no equity to claim the benefit of such bonds.

And even during the existence of the liens, the purchaser alone can object to the non-application to the extinguishment of the liens.

ERROR to the Common Pleas of Cumberland county.

*June* 8. Amicable action to try, whether Jeremiah Latshaw or Grove had the right to a judgment against one Garber, at the suit of Joseph Latshaw, entered to the use of Grove.

The condition of the bonds on which it was entered, after stating the amount to be paid, April 1, 1841, 1842, and 1843, continued, "to be applied to the liens on the lands I (Garber) bought from

Joseph Latshaw, unless he removes the same before this bond becomes due." The bond was assigned to Grove in 1840.

The land was conveyed the 21st of March, 1839, and these bonds given for the balance of the purchase money.

In June, 1838, Jeremiah, the defendant in error, obtained a judgment against Joseph Latshaw; which was revived in 1843, without notice to Garber, and of course, the lien was discharged as to the land purchased by Garber.

The plaintiff in error requested the court to instruct the jury, that the stipulation in the bond enured to the benefit of Garber only, and that Jeremiah could not recover, as the land was discharged from liens.

The court (HEPBURN, President) was of opinion that it enured to the benefit of the lien creditors.

*Gallagher* and *Reed*, for plaintiff in error.—The stipulations in the condition of the bond were made for the sole benefit of Garber, and not for the benefit of Jeremiah Latshaw, or any other lien creditor of Joseph Latshaw. The stipulations do not amount to a personal covenant on the part of Garber to pay the money, when his bond became due, to lien creditors. The principal object of the stipulations was to protect Garber.

In the interpretation of a contract, the motives that induced the parties to enter into it, and the objects to be effected, are to be regarded. Chitty on Contracts, 57, 74; Arnold et al. *v.* Lyman, 17 Mass. 400; Blymeyer *v.* Boistle, 6 Watts, 182; Campbell *v.* Shrum, 3 Watts, 60, 13 Johns. 496.

Jeremiah Latshaw was a stranger to the contract for the land, which Garber purchased from Joseph Latshaw; he was a stranger to the purchase, and there was no consideration moving from him. Sherman *v.* Farmers' Bank of Reading, 5 Watts & Serg. 373.

A purchaser of land, who has given his bond for the purchase money, may retain for encumbrances, although no covenant against them. Withers *v.* Atkinson, 1 Watts, 236.

The debts of a decedent cease to be a lien on his real estate after five years; although in his lifetime, he made a voluntary conveyance of it for the purpose of defrauding his creditors. 5 Watts & Serg. 374. They also cited 3 Penn. Rep. 229, as to lien.

The assignment of the bond to Grove by Latshaw, was not and could not have been fraudulent.

*Watts* and *Reed*, contrà.—Grove has no right to this money. The money for which the bond was given was to be paid to lien creditors. Jeremiah Latshaw, a lien creditor, claims under the condition of the

original bond. Grove claims under the assignment of the bond to him by Joseph Latshaw, the obligee. They contended that the assignment of the bond was fraudulent by Joseph Latshaw, and that Grove was a party to the fraud. When this bond was given, it was to be paid to Jeremiah Latshaw, a lien creditor, and not to Joseph Latshaw; and it was so understood and expressed. It was to be applied to liens on the land purchased by Garber from Joseph Latshaw. This bond was assigned before it fell due, and before the liens, on the land were removed. They cited Campbell *v.* Shrum, 3 Watts, 60; Blank *v.* German, 5 Watts & Serg. 36.

The simple question is, who in equity is entitled to this money, Jeremiah Latshaw or Abraham Grove?

[ROGERS, J.—Jeremiah Latshaw had a better security than the bond; he had his lien.]

It is true, he had a lien for his money; but entertaining full faith that the stipulations contained in the condition of the bond would be performed, he permitted his lien to expire. He is an honest creditor—was a lien creditor; and the question is, whether he is to have this money, or Grove, who is the assignee of the bond, with full notice, when he took it, that it was to be paid to Latshaw, and who is a claimant without consideration. Before he can be permitted to claim this money, he should be compelled at least to show that he has paid some consideration. Jeremiah Latshaw has showed a full consideration, and he is entitled to the money in equity and law.

GIBSON, C. J.—The consideration of the bonds whose produce is in court for distribution, did not move from the lien creditors, and they consequently derive no equity from it. The bonds were not given for their protection; and the stipulation, in the condition of each, that the purchase money secured by it should be applied to the encumbrances, was inserted, not to provide against the omission of the obligee as to them, but to defend the obligor against their liens. Their interest in the bonds was secondary and accidental; and when the purchaser's right to call for an application of the purchase money ceased with the liens, which had been the object of it, the indirect advantage they derived from the stipulation ceased also. Their interest in it was incidental and dependent, like the interest of partnership creditors to have the joint effects applied to the joint debts, which is sustained by no equity of their own, but by the mutual equities of the partners themselves, which arise from the peculiar nature of the contract of partnership, and which cease with

the joint ownership of the stock. It is settled by Ex parte Ruffin, 6 Ves. 119, and Ex parte Williams, 11 Ves. 3, as well as many cases since, that if the joint effects become the exclusive property of one of the partners, the priority of the joint creditors is gone. In like manner the clause in the condition of these bonds, which was designed to protect the obligor against the liens, became obsolete at the extinction of them; and the advantage it would otherwise have given the lien creditors, was gone. At no time had they colour of right, legal or equitable, to the purchase money for which the bonds were given, or to any particular application of it. Their hold was on the land, and when they suffered it to be relaxed by the expiration of their liens without revival, they parted with the incidental means of stimulating the obligor to insist on an application for his own, and consequently for their benefit. But he might have waived his right to do so, without consulting them, even while the liens were in life; and as he does not call for any particular application of the purchase money now, they cannot do it for him.

Judgment reversed, and <em>venire de novo</em>.